UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 2:06-cr-0160-RLH-RJJ |
| vs. | ) | **O R D E R** |
| FALASHA ALI, | ) | (§2255 Motion to Vacate–#95) |
| Defendant. | ) | |

Before the Court is Defendant's **Motion Pursuant to 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody** (#95, filed June 2, 2010). The Motion, including the memorandum of law, totals 285 pages. Pursuant to an order of this Court, the United States filed its 14-page Response in Opposition (#101) on September 15, 2010. Defendant filed his 87-page Reply (#105) on November 1, 2010.

For the reasons explained below, the Court finds that the majority of Ali's claims are waived or procedurally defaulted, and are without merit. The remaining claims lack any substantive merit under *Strickland v. Washington*, 466 U.S. 668 (1984). Accordingly, the Motion will be denied.

BACKGROUND ESSENTIALS

During a six-month period in 2005 and 2006, Defendant robbed tens of thousands of dollars from four federally-insured banks in Las Vegas, Nevada. Specifically, he admitted to robbing banks on September 10, 2005, March 15, 2006, March 18, 2006 and April 8, 2006 (as

1

charged in the Superseding Criminal Information (#60)).  He was charged with, and admitted to, one count of Bank Robbery and three counts of Armed Bank Robbery, together with one count of Use of Firearm During a Crime of Violence.  He possessed a handgun in three of the four bank robberies, but he brandished the weapon during the March 18, and April 8, 2006 bank robberies.  He also admitted to robbing four other banks in 2006, and, although those were not formally charged in the Superseding Criminal Information, he specifically admitted to the facts underlying those other four uncharged bank robberies.

Ali was originally only charged with one bank robbery and use of a firearm during the bank robbery.  He was arraigned on May 19, 2006.  On September 18, 2006, after filing an unopposed stipulation to continue, his defense counsel filed an unopposed stipulation for psychiatric evaluation, which this Court granted within a week.  He was sent to the Metropolitan Correctional Center in San Diego, CA,  where he was examined and evaluated by the clinical staff.

Contrary to Defendant Ali's repeated claims that he was only seen by Gordon M. Zilberman, Ph.D, the author of the report, the report itself demonstrates that Ali's claims are false.  He was examined for hours by a number of members of the psychiatric clinic staff and spoke to at least two psychologists, including Dr. Zilberman.

The findings of the psychiatric report will not be repeated in their entirety here, but while noting there was "evidence for and against Mr. Ali's being mentally ill.  He is presently fully compliant with his medication regimen and claims to be mostly free of any severe symptoms.  This writer's observations and that of other staff indicate that the defendant is not experiencing any symptoms at this time."  The report states, *inter alia*, "Overall, Mr. Ali demonstrated an adequate ability to understand the nature and consequences of the court proceedings against him and an adequate ability to properly assist counsel in a defense."  "He stated that he was charged with 'multiple bank robberies.'"  "He expressed confidence in his attorney to provide an adequate defense.  The defendant adequately demonstrated that he is able to rationally weigh the evidence against him and decide whether to accept a plea bargain."

After eight more continuances, and after the United States learned that Ali had been "linked to eight other bank robberies," Defendant negotiated a plea agreement (#62) and pled guilty to a Superseding Criminal Information on May 28, 2008. He not only admitted to the robberies and weapon charged in the Information, but also to facts underlying uncharged bank robberies (See ##60 and 62). Both in the Plea Memorandum (Agreement) and the plea colloquy, Ali acknowledged that he had read it, that he understood the terms and conditions and the factual basis set forth therein, had discussed the matters with his attorney, that the factual recitation there in was true and correct. He also stated that he was satisfied with his attorney's representation of him.

The Plea Memorandum also contained a "Waiver of Appeal" wherein he waived his right to appeal any sentence within the sentencing guideline range as determined by the parties. During the plea colloquy, he acknowledged that he knew he was waiving his right to appeal under those circumstances, he had discussed it with his attorney, and, that he was doing it voluntarily.

Following the preparation and revision of the Presentence Report (PSR), and the filing of defense counsel's seven-page Sentencing Memorandum, Defendant was sentenced on October 2, 2008. In defendant's Sentencing Memorandum, counsel argued that Ali believed he only should have 12 criminal history points, making a criminal history category of V. This Court rejected the finding of the PSR of an offense level of 31. Rather, the Court adopted the offense level agreed upon by the parties in the Plea Memorandum, of 29. With an offense level of 29 and a criminal history category of V, the guideline range would be 140-175 months. With an offense level of 29 and a criminal history category of VI, the guideline range would be 151-188 months. This Court, after considering the history and characteristics of the Defendant, sentenced him to 160 months (for each count to run concurrently), plus the mandatory consecutive 84 months, or seven years, for the brandishing of the firearm, for a total of 244 months. This is within the guideline range agreed upon by Ali and the Government under the calculation of either. It is toward the low end of the Government's guideline calculation and in the mid-range of the Defendant's guideline calculation. Thus, it is within Defendant Ali's waiver-of-right-to-appeal bar.

Notwithstanding Ali's Waiver of Appeal, he filed a notice of appeal to the Ninth Circuit, which dismissed the appeal on June 2, 2009, because of the waiver of appeal.

## DISCUSSION AND DECISION

This §2255 motion sets forth a host of claims that, due to the waiver, were never raised on direct appeal. Most of his claims concern his mental condition–a condition that was thoroughly examined by the court-appointed BOP doctors, forcefully argued by his attorney, and never deemed to prevent him from understanding the legal proceedings or assisting in his defense. There is no question, based on the evaluations by BOP psychologists, that Ali has significant mental health issues. However, the competency standard is whether defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as a factual understanding of the proceedings against him." *See Modinez v. Moran*, 509 U.S. 389 (1993).

The BOP doctors specifically found that "Overall, Mr. Ali demonstrated an adequate ability to understand the nature and consequences of the court proceedings against him and an adequate ability to properly assist counsel in a defense." "He stated that he was charged with 'multiple bank robberies.'" "He expressed confidence in his attorney to provide an adequate defense. The defendant adequately demonstrated that he is able to rationally weigh the evidence against him and decide whether to accept a plea bargain." Furthermore, Ali neither expressed nor demonstrated, at the change of plea or the sentencing, any hint that he was incompetent, confused, or unable to understand what he was doing or what was going on.

He rails about the fact that he was on psychotic drugs, that he was confused, and that his waiver was "drug induced." He was in fact taking drugs to help him maintain stability and an understanding of what was happening. The doctors said that as long as he was taking the drugs he was competent and able to function. In fact, in a letter sent to the Court from Ali, just before the sentencing, he states that, "I am extremely stable and outgoing when on my prescribed medication." page 5 of the letter mailed September 30, 2008. That is precisely as the Court found him both at the

change of plea and the sentencing. There was no reason to order another competency examination or hold a hearing on the issue. He provides no evidence that he was taking the wrong medication, or misusing the medication. He admitted to the Court that his attorney had made everything clear to him, *i.e.,* he understood what was happening and what he was doing.

His complaints, that the examining psychologist did not get New Mexico medical records, is disingenuous when he, himself, admits that he was told that the records no longer existed. Moreover, he, himself, reported to the examining psychologists his prior condition and treatment, although what he told them conflicts with what he tells the Court now.

He objects to the Court refusal to remove from the PSR references to charges in the past to which he was acquitted or which were dismissed. The Court made it clear that it was not considering those charges in its sentencing, but refused to remove those paragraphs because they were an accurate account of his history.

He now, contrary to what was argued as sentencing, claims that he should only have had seven criminal history points, rather than the 12 or 17 argued at sentencing. He provides no documentation to support that assertion.

He claims that if he knew the other charges would increase his offense level, he would have gone to trial or got a better deal from the Government. There is no record of his ever wanting to, or intending to, go to trial. Nor is there any evidence that by refusing this plea agreement the Government would have offered him a better one. Finally, he admitted to the uncharged conduct, and the Court declined to increase the offense level based upon those uncharged robberies.

This Court need not reach the merits of those claims which have been procedurally defaulted. Where a defendant fails to raise a substantive argument on direct appeal, that argument is defaulted. The doctrine of procedural default holds that where a defendant fails to raise a substantive argument on direct appeal, that argument is defaulted and cannot–absent extremely unusual circumstances–be raised collaterally under Section 2255. *Massare v. United States*, 538 U.S. 500, 504 (2003). Justice Scalia has thus summarized: "[A] prior *opportunity* for full and fair litigation is

1  normally dispositive of a federal prisoner's habeas claim.  If the claim was . . . *not* raised [on direct
2  appeal], it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing
3  equitable considerations."  *Withrow v. Williams*, 507 U.S. 680, 720-721 (1993) ( Scalia, J.,
4  concurring) (citing *United States v. Frady*, 456 U.S. 152 (1982)).

5        The procedural default rule serves critical interests.  By requiring litigants to advance
6  their legal arguments on (not after) direct appeal, the rule "conserve[s] judicial resources and . . .
7  respect[s] the law's important interest in the finality of judgments."  *Massaro*, 538 U.S. at 504; *See,*
8  *also, Sunal v. Large*, 332 U.S. 174, 148 (1947).  Defendants who fail to appeal, or waive their right
9  to appeal, cannot renew their attack on the judgment by habeas corpus.  Otherwise, litigation in
10  criminal cases would be interminable.  *Id*. at 178.

11        "A §2255 movant procedurally defaults his claims by not raising them on direct
12  appeal and not showing [1] cause and prejudice or [2] actual innocence in response to the default."
13  *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (citing *Bousely v. United States*, 523
14  U.S. 614, 622 (1998)) *see also United States v. Johnson*, 988 F.2d 942, 945 (9th Cir. 1993) ("If a
15  criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do
16  so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting
17  from the claim of error.").

18        These principles foreclose the arguments Ali now raises for the first time.  On direct
19  appeal, Ali did not–as he does here–argue: (1) that the district court "erred" by "relying" on his
20  acquitted conduct, (2) that such reliance "reeked of double jeopardy;" that his right to "due process
21  was . . . eviscerated" by the prosecutor's brief, accurate reference to the acquitted conduct–which, in
22  any event, the district court never used to *enhance* his base offense level above the prescribed and
23  agreed upon Level 29.  Those claims are thus procedurally defaulted, as Ali does not–and can-
24  not–establish "cause-and-prejudice" or "actual innocence" to excuse his procedural default.  The
25  "cause" for not raising these arguments on direct appeal is that Ali *bargained them away* by signing
26  the favorable Plea Memorandum and binding himself to its appellate waiver.

1    The parties did not contemplate, nor does the law provide, that Section 2255 would
2 substitute for a waived direct appeal.  A litigant seeking a favorable plea offer cannot agree to a
3 waiver of appeal provision, but then interpose that very provision as "cause" to excuse his proce-
4 dural default.  *Accord United States v. Pipitone*, 67 F.3d 34, 39 (2nd Cir. 1995) (rejecting the notion
5 that appellate waiver can later excuse procedural default.).

6    Furthermore, Ali cannot establish "prejudice."  The only bases for Ali's claim that
7 his counsel erred is, (1) his argument that she failed to vigorously argue his mental condition and
8 demand a further mental examination; and (2) his argument that she told him that if he did not
9 accept the offered plea deal he could go to prison for life.  As to the latter, the maximum sentence
10 for brandishing a firearm during a bank robbery is life (the seven years to be served consecutively is
11 the mandatory minimum).  Furthermore, if he did not accept the plea, the United States would have
12 undoubtedly superseded the Indictment to add the uncharged robberies.  It is very likely that he
13 could have faced a life sentence.  As to the first argument, the Court has already described the total
14 absence of any basis for his attorney to demand another competency hearing.  Furthermore, she did
15 argue his mental issues vigorously.

16    Ali's allegations about ineffective counsel fall far short of a Constitutional violation.
17 *See Strickland*, 466 U.S. at 687-88 (petitioner must establish (1) that counsel representation fell
18 below an objective standard of reasonableness, and (2) that deficient performance prejudiced the
19 defendant).  Here, his counsel requested and obtained a psychological evaluation, she challenged
20 where appropriate the PSR and obtained significant changes in the final PSR, she argued strongly
21 Ali's sad upbringing, possible weaknesses in the competency report, and successfully argued for the
22 application of the agreed upon offense level, all this in the face of Defendant's admission of
23 numerous violent felonies and the use of a firearm.  Her conduct was not only within the rage of
24 acceptable performance, it was exemplary under the circumstances.

25    Accordingly, Defendant Ali's claims have been waived, are procedurally defaulted,
26 and/or are totally without merit and the Motion will be denied.

IT IS THEREFORE ORDERED that Defendant's **Motion Pursuant to 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody** (#95) is DENIED.

Date: November 17, 2010.

_____
Roger L. Hunt
Chief United States District Judge